Ruberti v Butler (2024 NY Slip Op 02358)

Ruberti v Butler

2024 NY Slip Op 02358

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

CV-23-1540
[*1]Richard J. Ruberti, Appellant,
v
Sara J. Butler et al., Respondents.

Calendar Date:March 28, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Abdella & Sise, LLP, Gloversville (Robert E. Abdella of counsel), for appellant.
Law Offices of Jennifer S. Adams, Williamsville (Paul G. Hanson of counsel), for respondent.

McShan, J.
Appeal from an order of the Supreme Court (Rebecca A. Slezak, J.), entered August 17, 2023 in Fulton County, which granted defendants' motion for summary judgment dismissing the complaint.
In August 2022, plaintiff was riding his bicycle on a bike path in the City of Gloversville, Fulton County and, upon entering the intersection of West Eighth Avenue and Bleecker Street, was struck by a vehicle driven by defendant Sara J. Butler.[FN1] Plaintiff subsequently commenced this action alleging that Butler had negligently failed to observe plaintiff before making a left turn, precipitating the collision and his resulting injuries. After issue was joined, defendants moved for summary judgment dismissing the complaint upon the basis that plaintiff's admitted failure to stop at a stop sign on the bike path prior to entering the intersection and his failure to yield the right-of-way to Butler rendered him the sole proximate cause of the collision. Supreme Court granted defendants' motion and dismissed the action. Plaintiff appeals.
We reverse. As relevant here, every driver of a vehicle approaching a stop sign, including a bicyclist, must stop before entering an intersection (see Vehicle and Traffic Law § 1172 [a]; see also Vehicle and Traffic Law § 1231), and "shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection" (Vehicle and Traffic Law § 1142 [a]). However, a driver operating a motor vehicle must "exercise due care to avoid colliding with any bicyclist . . . upon any roadway" (Vehicle and Traffic Law § 1146 [a]). Further, "[t]he driver of a vehicle intending to turn to the left within an intersection . . . shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close as to constitute an immediate hazard" (Vehicle and Traffic Law § 1141). While a violation of the Vehicle and Traffic Law is indicative of a driver's negligence, that violation does not, in and of itself, "preclude the existence of a fact issue as to a [party's] comparative fault" (Ohl v Smith, 215 AD3d 1019, 1020 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Cox v Nunez, 23 AD3d 427, 428 [2d Dept 2005]). In this respect, "the proponent of a motion for summary judgment has the burden of establishing freedom from comparative fault as a matter of law" (Palmeri v Erricola, 122 AD3d 697, 698 [2d Dept 2014]). "To meet that burden, defendant[s] [were] required to establish that [Butler] fulfilled [her] common-law duty to see that which [s]he should have seen as a driver through the proper use of [her] senses, and to exercise reasonable care under the circumstances to avoid an accident, including that [s]he met the obligation to keep a reasonably vigilant lookout for bicyclists" (Pagels v Mullen[*2], 167 AD3d 185, 187 [4th Dept 2018] [internal quotation marks, brackets and citations omitted]).
The parties' submissions on the motion included, among other things, the deposition transcripts of plaintiff and Butler, who provided their respective accounts of the otherwise unwitnessed accident. Plaintiff testified that he had traveled the bike path in question, noting the downhill grade through the intersection. Plaintiff acknowledged that there is a stop sign positioned several feet before the bike path crosses through the street intersection and, on the morning of the accident, he came to a "rolling stop, not a complete stop" at the stop sign before proceeding through the intersection. According to plaintiff, he observed that the traffic light was green for West Eighth Avenue but did not see Butler's oncoming vehicle before entering the intersection. Plaintiff averred that the impact occurred in the middle of the intersection. Conversely, Butler testified that she approached and stopped at a red light on West Eighth Avenue for about 30 to 45 seconds. When the traffic light turned green, she looked around and there "wasn't a car, a bicycle or a pedestrian in sight," so she proceeded to turn left onto Bleecker Street. According to Butler, she "looked to the right as far down the trail as you could see" and "[t]here was no bicyclist in sight at the part of the trail that is visible from where I was in my vehicle." Butler testified that, after she commenced the turn, she heard plaintiff scream and the impact occurred one to two seconds later after her front tires had crossed the pedestrian crosswalk on Bleecker Street.
We note plaintiff's admission that he came to a "rolling stop" at the stop sign, which amounts to a violation of Vehicle and Traffic Law § 1172 (a) and establishes some degree of fault on his part. Nevertheless, that fact is not dispositive as to whether he was the sole proximate cause of the accident (see London v North, 152 AD3d 884, 885 [3d Dept 2017]; Colpan v Allied Cent. Ambulette, Inc., 97 AD3d 776, 777 [2d Dept 2012]). To this point, Butler's testimony suggests that no other vehicles were at the intersection prior to her turning left and that her visibility down the bike path was limited to approximately 20 feet, due in part to a building, trees and bushes obstructing her view. However, our review of the photographs of the intersection contained in the record casts doubt on that account, as a lengthy portion of the bike trail both preceding and after the stop sign located on said trail appears visible from Butler's vantage point both at the light and after she commenced the left turn.[FN2] Whether plaintiff should have been visible to Butler is further unresolved by the time frames relative to Butler commencing the turn and the time to impact as well as the varying accounts from plaintiff, Butler and the police report specific as to how far Butler had traveled into the intersection before the collision took place (see Hart v Chiang[*3], 222 AD3d 628, 629 [2d Dept 2023]; Kruter v United Parcel Serv. Gen. Servs. Co., 210 AD3d 671, 672 [2d Dept 2022]; Pagels v Mullen, 167 AD3d at 189; Tapia v Royal Tours Serv., Inc., 67 AD3d 894, 895-896 [2d Dept 2009]; compare Miglionico v Leroy Holdings Co., Inc., 78 AD3d 1306, 1307 [3d Dept 2010]). We consequently disagree with Supreme Court's conclusion that the only permissible inference was that Butler was in the intersection first and, accordingly, had the right-of-way when the collision occurred (see Vehicle and Traffic Law §§ 1141, 1142 [a]). Altogether, viewing the evidence in the light most favorable to plaintiff, questions of fact remain as to whether Butler was comparatively at fault for failing to see what was to be seen, and whether she failed to exercise due care to avoid colliding with plaintiff (see Vehicle and Traffic Law § 1146 [a]; Khalil v Garcia-Olea, 222 AD3d 853, 854 [2d Dept 2023]; Gonzalez v Gonzales, 212 AD3d 716, 717 [2d Dept 2023]; Ellis v Vazquez, 155 AD3d 694, 695 [2d Dept 2017]; Brenner v Dixon, 98 AD3d 1246, 1248 [4th Dept 2012]; see also Smith v State of New York, 121 AD3d 1358, 1359 [3d Dept 2014]). Defendants' motion should therefore have been denied.
Garry, P.J., Egan Jr., Fisher and Powers, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and motion denied.

Footnotes

Footnote 1: Matthew J. Towne, the other named defendant, is the co-lessee of the vehicle that Butler was driving at the time of the accident.

Footnote 2: Defendants' contention that certain images of the intersection procured from Google Maps and submitted in opposition to the motion should not be considered by this Court based on a lack of foundation was raised for the first time at oral argument and is therefore unpreserved (see Slezak v Stewart's Shops Corp., 133 AD3d 1179, 1180-1181 [3d Dept 2015]; see also CPLR § 4532-b). In any event, even excluding the specific photographs that defendants take issue with, our conclusion as to what the unobjected to photographs depict and the import on the motion remains the same.